# EXHIBIT A

# CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This Class Action Settlement Agreement and Release (the "Agreement") is entered into by and between Plaintiffs Rev. Pearce Ewing, Rev. Charles R. Jackson, Presiding Elder Cedric V. Alexander, Rev. Derrell Wade, Rev. Reuben J. Boyd, Presiding Elder Phillip Russ, IV, Lynette Glenn, Guardian of Rev. Marcius King, Rev. Matthew Ewing, Rev. A. Offord Carmichael, Jr., and Rev. Diane Conley ("Plaintiffs"), for themselves and the Settlement Class (as defined below), on the one hand, and African Methodist Episcopal Church ("AME Church") and African Methodist Episcopal Church, Inc., AMEC Ministerial Retirement Annuity Plan, AMEC Department of Retirement Services, AMEC General Board and AMEC Council of Bishops ("AME Defendants"), on the other hand. Plaintiffs and AME Defendants are referred to collectively in this Agreement as the "Settling Parties." The Agreement does not release any claims or cross-claims that Plaintiffs or the AME Defendants have against any other party in the Action.

## 1.0    RECITALS

1.1    In 1964, AME Church established the AMEC Retirement Plan, which became known as the African Methodist Episcopal Church Ministerial Retirement Annuity Plan, and which was intended to constitute a qualified Internal Revenue Code ("IRC") Section 401(a) Church-sponsored retirement plan.

> 1.1.1 The purpose of the Annuity Plan was to provide annuity coverage to certain personnel of the AME Church, including but not limited to bishops, general officers, college presidents, deans of theological seminaries, itinerant elders and salaried personnel of the connectional departments of the AME Church, and church pastors and ordained ministers.

> 1.1.2 Contributions on behalf of participants were due at each Annual Conference and Mid-Year Convocation and remitted and reported by the respective presiding elders to the Department of Retirement Services.

1



1.2    By General Conference of 1996, the AME Church established the African Methodist Episcopal Church Retirement Plan for Pastors and Presiding Elders, effective as of January 1, 2000, which was intended to constitute a qualified IRC Section 403(b) Church-sponsored retirement plan.

1.2.1 This Retirement Plan was designed to provide retirement contributions for certain pastors and presiding elders through annual allocations from the General Budget Fund at no cost to participants.

1.3    In accordance, certain eligible personnel of the AME Church received benefits pursuant to the 401(a) Plan and the 403(b) Plan as sponsored by the AME Church. For all relevant intents and purposes, from 2000 to 2021, both Plans were being administered collectively by the Department and referred to as "the Plan."

1.4    From 2000 to 2021, Jerome V. Harris was successively elected as the Executive Director of the Department of Retirement Services.

1.5    Upon his retirement, at the last General Conference in which he delivered his report, Harris announced that the Plan value as of fiscal year end for 2021 was $128,342,168.19. Harris represented that the Plan's assets were held and invested in annuities purchased through Symetra.

1.6    However, during the transition of the newly elected Director of Retirement Services in the fall of 2021, it was discovered the Plan only had two verifiable assets – a Symetra annuity account and real estate in Florida. The Symetra annuity account balance as of June 30, 2021 was $36,922,791.11, and the real estate in Florida had a book value of $1,500,000.00.

1.7    On March 4, 2022, Plaintiff Pearce Ewing filed a lawsuit against AME Church, among others, in the Western District of Tennessee, Case No. 2:22-cv-02136 (W.D. Tenn.).

1.8    Five additional lawsuits were filed shortly thereafter, and on June 2, 2022, the United States Judicial Panel on Multidistrict Litigation centralized the six pending actions and transferred to the



Western District of Tennessee for coordinated pretrial proceedings ("AME Church Employee Retirement Fund Litigation").

1.9    Thereafter, on August 19, 2022, Plaintiffs filed a Consolidated Amended Complaint against AME Defendants, among others, asserting claims individually and on behalf of a putative class. Plaintiffs asserted the following causes of action against AME Defendants: (1) breach of fiduciary duty; (2) violation of Tennessee Trust Code; (3) negligence; (4) fraudulent concealment; (5) fraudulent misrepresentation; (6) breach of contract; (7) promissory or equitable estoppel; and (8) tort of outrage.

1.10    On September 19, 2022, AME Defendants moved to partially dismiss Plaintiffs' Consolidated Amended Complaint. On October 18, 2022, AME Defendants answered Plaintiffs' breach of fiduciary duty and negligence claims.

1.11    On February 6, 2023, Plaintiffs and AME Defendants, Defendant Newport Group, Inc., Defendant Symetra Life Insurance Company, Defendant Dr. Jerome V. Harris, and Defendant Robert Eaton mediated with Hon. Janice M. Holder (Ret.).

1.12    On March 17, 2023, the Court granted in part, denied in part, the AME Defendants' partial Motion to Dismiss. Of the causes of action asserted against the AME Defendants, only breach of fiduciary duty and negligence remained.

1.13    On May 4, 2023, Plaintiffs and AME Defendants mediated for a second time before Justice Holder.

1.14    On July 30, 2024, the Settling Parties mediated their claims before Justice Holder and continued those discussions over several subsequent days before reaching an agreement on the material terms of the Settlement. The Settling Parties continued to engage in arm's length settlement negotiations with Justice Holder.

3



1.15    On August 29, 2024, after two years of extensive discovery and evidentiary proceedings in the Action, Plaintiffs filed their Second Consolidated Amended Complaint. In the Second Consolidated Amended Complaint, Plaintiffs assert: (1) breach of fiduciary duty; (2) negligence; (3) fraudulent concealment; and (4) breach of contract claims against AME Defendants, individually, derivatively on behalf of the Plan, and on behalf of a putative class.

1.16    Those settlement discussions have occurred in three separate sessions of mediation over the past eighteen months and multiple conversations between Plaintiffs' Counsel and AME Defendants' Counsel.

1.17    On August 31, 2024, the Parties entered into a Memorandum of Understanding ("MOU") regarding the settlement in principle, the terms of which are intended to be incorporated into this Agreement.

1.18    On November 25, 2024, Plaintiffs and the AME Defendants jointly moved to dismiss Plaintiffs' claims against Defendants Bishop James L. Davis and Bishop Samuel L. Green without prejudice.

1.19    AME Defendants deny that they have any liability for the alleged violations and maintain that they would prevail on Plaintiffs' claims against them. Plaintiffs similarly believe they would prevail on their claims against the AME Defendants. Nevertheless, given the risk, uncertainties, burden, and expense of continued litigation between the Settling Parties, the Settling Parties have agreed to settle Plaintiffs' claims against the AME Defendants in the Action on the terms set forth in this Agreement, subject to the district court's approval.

1.20    Both Plaintiffs and AME Defendants have a complete understanding of the strengths and weaknesses of their respective cases, and have fully and exhaustively vetted the disputed issues, including collectability of a judgment against the AME Defendants. Plaintiffs' Counsel submit

4



that they have significant experience with class action claims, having represented plaintiffs in numerous putative class actions. Based on this experience, Plaintiffs' Counsel believes that Plaintiffs' claims against AME Defendants have merit. Plaintiffs' Counsel recognize and acknowledge, however, that prosecuting such claims through further fact and expert discovery, class certification, dispositive motions, trial, and appeals will involve considerable uncertainty, time, and expense.

1.21    This Agreement resulted from good-faith, arm's-length settlement negotiations after years of litigation and the involvement of third-party meditator over several mediation sessions.

1.22    Based on extensive discovery and the negotiations described above, Plaintiffs' counsel have concluded, taking into account the risks, uncertainty and cost of further prosecution of their claims against AME Defendants, and the benefits to be received by Class Members pursuant to this Agreement, that a settlement with AME Defendants on the terms set forth in this Agreement is fair, reasonable, and adequate, and in the best interests of Class Members.

1.23    The Settling Parties understand, acknowledge, and agree that the execution of this Agreement constitutes the settlement and compromise of disputed claims. This Agreement is inadmissible as evidence against any Settling Party or any other Party in the Action except to enforce the terms of the Agreement and is not an admission as to any legal issues, wrongdoing, or liability on the part of any party to this Agreement. The Settling Parties desire and intend to effect a full, complete, and final settlement and resolution of all existing disputes and claims they have against one another as set forth in this Agreement.

1.24    The settlement contemplated by this Agreement is subject to preliminary approval and final approval by the district court. The Settling Parties hereby stipulate and agree that, in consideration of the agreements, promises, and covenants set forth in this Agreement, and subject to approval of



the district court, Plaintiffs' claims in this Action against AME Defendants shall be fully and finally settled.

## 2.0   DEFINITIONS

As used in this Agreement, the terms set forth below shall have the following meanings. The singular includes the plural and vice versa.

2.1    "Action" means the case captioned *In Re: AME Church Employee Retirement Fund Litigation*, Case No. 1:22-md-3035 (W.D. Tenn.). "Agreement" means this Settlement Agreement.

2.2    "Advisor" means Disciplina Group LLC, an independent professional investment advisor retained by the AME Church to invest the Tax-Qualified Trust into which the Settlement Amount and the Legacy AMEC Retirement Funds will be transferred. The Advisor shall not be an employee of the AME Church, and who shall be a fiduciary of the Plan and maintain adequate insurance coverage to cover potential losses in managing the Plan's assets in excess of $60,000,000.

2.3    "Administrator" means Verita Global, LLC, a settlement administrator retained to assist in administering and implementing the Settlement and issuing Class Notice to the Settlement Class. The Administrator shall be an "administrator" within the meaning of Treasury Regulation § 1.468B-2(k)(3).

2.4    "Agreement" means this Settlement Agreement.

2.5    "AME Defendants' Counsel" means:

| HUNTON ANDREWS KURTH, LLP | BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC |
|---|---|
| **Douglass P. Selby**<br>General Counsel of AME Church<br><br>Bank of America Plaza, Suite 4100<br>600 Peachtree Street, NE<br>Atlanta, GA 30308<br>T: 404.888.4000 | **Bruce A. McMullen**<br>First Horizon Building<br>165 Madison Ave., Ste. 2000<br>Memphis, TN 38103<br>T: 901.526.2000<br>bmcmullen@bakerdonelson.com |



| | |
|---|---|
| dselby@huntonak.com<br><br>**Wendell Taylor**<br>2200 Pennsylvania Avenue, NW<br>Washington, DC 20037<br>T: 202.955.1500<br>wtaylor@huntonak.com | **Mary Wu Tullis**<br>First Horizon Building<br>165 Madison Ave., Ste. 2000<br>Memphis, TN 38103<br>T: 901.526.2000<br>mtullis@bakerdonelson.com |

2.6     "Class" means all persons residing in the United States who were participants, or were those participants' respective beneficiaries entitled to benefits, in the African Methodist Episcopal Church Ministerial Retirement Annuity Plan on June 30, 2021. Defendants are excluded from the Class.

2.7     "Class Counsel" means individually and collectively, the attorneys and law firms approved and appointed by the Court to represent the Settlement Class, including:

| | |
|---|---|
| Matthew E. Lee<br>**MILBERG COLEMAN BRYSON**<br>**PHILLIPS GROSSMAN, PLLC**<br>900 W. Morgan Street<br>Raleigh, NC 27603<br>919-600-5000<br>Fax: 919-600-5035<br>mlee@milberg.com | Gregorio A. Francis<br>**OSBORNE & FRANCIS**<br>**LAW FIRM, PLLC**<br>433 Plaza Real, Suite 271<br>Boca Raton, FL 33432<br>(561) 293-2600<br>Fax: (561) 923-8100<br>gfrancis@realtoughlawyers.com |
| J. Gerard Stranch, IV<br>**STRANCH, JENNINGS**<br>**& GARVEY, PLLC**<br>223 Rosa L. Parks Avenue, Suite 200<br>Nashville, Tennessee 37203<br>(615) 254-8801<br>Fax: (615) 255-5419<br>gstranch@stranchlaw.com | Kenneth S. Byrd<br>**LIEFF CABRASER**<br>**HEIMANN & BERNSTEIN, LLP**<br>222 2nd Ave S<br>Nashville, TN 37210<br>615-313-9000<br>Fax: 615-313-9965<br>kbyrd@lchb.com |
| Susan L. Meter<br>**KANTOR & KANTOR LLP** | Richard Schulte<br>**WRIGHT & SCHULTE LLC** |

| | |
|---|---|
| 19839 Nordhoff Street<br>Northridge, CA 91324<br>818-886-2525<br>Fax: 818-350-6274<br>smeter@kantorlaw.net | 865 S. Dixie Dr.<br>Vandalia, OH 45377<br>937-435-9999<br>Fax: 937-435-7511<br>rschulte@yourlegalhelp.com |
| Julie Nepveu<br>**AARP Foundation**<br>601 E Street, NW<br>Washington, DC 20049<br>(202) 434-6280<br>Fax: (202) 434-6424<br>jnepveu@aarp.org | Dhamian Blue<br>**BLUE LLP**<br>P.O. Box 1730<br>Raleigh, NC 27602<br>919-833-1931<br>Fax: 919-833-8009<br>dab@bluellp.com |

2.8   "Class Member" means any person who is a member of the defined Class who does not timely and validly request exclusion from the Class.

2.9    "Class Notice" means the notice mailed to potential Class Members of the preliminary approval of this Agreement and of the proposed Settlement, as provided in Section 5.5.

2.10   "Court" means the United States District Court, Western District of Tennessee, Western Division, and the judge to whom the Action has been assigned.

2.11   "Days" means calendar days, unless otherwise noted. When a deadline or date in this Agreement falls on a weekend or a legal Court holiday, the deadline or date shall be extended to the next business day that is not a weekend or legal Court holiday.

2.12   "Effective Date" shall be the first date after the last of the following dates: (i) the date upon which the time expires for filing a notice of appeal of the Court's Final Approval Order, with no appeals having been filed; or (ii) if there is an appeal or appeals of the Final Approval Order, three (3) days after the date of entry of an order affirming the Final Approval Order without material modification, and the time for review of that order has run, or entry of an order dismissing the appeal(s).



2.13    "Final Approval Hearing" means the hearing held by the Court, at least ninety (90) days after the entry of Preliminary Approval to, (a) determine whether to grant final approval of this Agreement as fair, reasonable, and adequate; (b) consider any timely objections to this Agreement and all responses thereto; and (c) rule on any Fee and Cost Application.

2.14    "Final Approval Order and Judgment" means the order and judgment to be entered by the Court approving the Settlement as reasonable, adequate, and in the best interests of the Class Members, and fully and finally disposing of all claims asserted in the Action against Defendants. In the event that the Court issues separate orders addressing the matters constituting final settlement approval, the Final Approval Order includes all such orders.

2.15    "Legacy Fund" means that part of the African Methodist Episcopal Church Ministerial Retirement Annuity Plan as it existed prior to the effective date of AME Church's new Plan with Wespath, with assets in Symetra annuities, real property in Key Marco, Florida, and recovery for losses on assets as asserted in the AME Church Employee Retirement Fund Litigation.

2.16    "Net Settlement Fund" means the Settlement Fund less (i) Notice and Administration Expenses[1] and (ii) any Fee and Expense Award and interest thereon.

2.17    "Objection Deadline" means 60 days following entry of the Preliminary Approval Order as defined below.

2.18    "Opt-Out Deadline" means 60 days following entry of the Preliminary Approval Order as defined below.

---

[1] These expenses may only be deducted from the Settlement Fund up to the amount of any interest earned while the Settlement Amount is held in the Qualified Settlement Fund prior to Final Approval. Any Notice and Administration Expenses in excess of that interest earned shall be paid by AME Defendants separate and apart from the Settlement Amount.



2.19    "Person" means any natural person, individual, corporation, limited liability company, association, partnership, trust, or any other type of legal entity.

2.20    "Plan of Distribution" means the plan or formula of allocation and distribution of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Class Members.

2.21    "Preliminary Approval Order" means the Order entered by the Court that grants the relief requested in the Motion for Preliminary Approval.

2.22    "Proposed Settlement" and "Settlement" mean the settlement described in this Agreement.

2.23    "Qualified Settlement Fund" means an interest-bearing tax-qualified trust account established for and held in trust for the sole benefit of the Class Members and for receipt of the Settlement Amount, as provided within the meaning of Treasury Regulation § 1.468B-1 promulgated under Section 468B of the Internal Revenue Code of 1986 as amended.

2.24    "Qualified Trust" means the trust account that will be established by the AME Church to (1) operate the Legacy Fund and (2) into which the Net Settlement Amount will be transferred upon entry of the Final Approval Order and Judgment.

2.25    "Released Claims" means the claims released by Final Judgment, as defined in Section 11.1.

2.26    "Released Parties" means African Methodist Episcopal Church ("AME Church") and African Methodist Episcopal Church, Inc., AMEC Ministerial Retirement Annuity Plan, AMEC Department of Retirement Services, AMEC General Board and AMEC Council of Bishops and each of their former, past and present, direct and indirect, affiliates, departments, divisions, subdivisions, officers, directors, executives, employees, and attorneys. Released Parties does not include Dr. Jerome Harris and/or his Estate, along with all other Defendants aside from AME Defendants in this Action.



2.27    "Releasing Persons" mean Plaintiffs, all Class Members who do not properly and timely opt out of the Settlement Class, and their respective spouses, family members, executors, representatives, administrators, guardians, wards, heirs, attorneys-in-fact, estates, bankruptcy estates, bankruptcy trustees, successors, predecessors, attorneys, agents and assigns, and all those who claim through a Class Member or who assert claims (or could assert claims) on a Class Member's behalf.

2.28    "Settlement" means the resolution of the Action in accordance with the terms and provisions of this Agreement.

2.29    "Settlement Amount" means Twenty Million Dollars ($20,000,000) in cash adjusted to present value from August 2, 2024 to the date paid into the Qualified Settlement Fund and to be paid pursuant to Section 3.0. This is the total aggregate dollar amount that AME Defendants will be obligated to pay if the Settlement is approved by the Court, notwithstanding any Notice and Administrative Expenses in excess of the interest earned on the Settlement Amount while it is in the Qualified Settlement Fund. *See* FN 1.

2.30    "Settlement Class" means all Class Members who are not validly excluded and/or who have not timely opted out of this Settlement.

2.31    "Settlement Fund" means the Settlement Amount plus all interest, accretions, and earnings thereon. The Settlement Fund shall constitute a Qualified Settlement Fund.

2.32    "Settling Parties" means Plaintiffs, AME Defendants, and the Settlement Class.

2.33    "Tax" or "Taxes" mean any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties, additions to tax and additional amounts imposed with respect thereto) imposed by any governmental authority, including, but not limited to, any local, state, and federal taxes.



2.34   "Third Party Administrator" or "TPA" means the company to be hired to administer the Legacy Fund when the assets of the Legacy Fund currently held at Symetra are unwound, liquidated, and transferred to the Qualified Trust.

2.35   "Unknown Claim" is defined in Section 9.2.

## 3.0   SETTLEMENT TERMS AND BENEFITS TO THE SETTLEMENT CLASS

3.1   <u>Monetary Consideration</u>: As a precondition of the Settlement, the Administrator will create or cause the creation of the Qualified Settlement Fund in an appropriate form that complies with applicable law. Upon or before establishment of the Qualified Settlement Fund, the Administrator shall apply for an employer identification number for the Qualified Settlement Fund utilizing Internal Revenue Service Form SS-4 and in accordance with Treasury Regulation § 1.468B-2(k)(4),and shall provide AME Defendants with that employer identification number on a properly completed and signed IRS Form W-9.  If requested, the Administrator and AME Defendants shall fully cooperate in filing a relation-back election under Treasury Regulation § 1.468B-1(j)(2) to treat the Qualified Settlement Fund as coming into existence as a Settlement Fund as of the earliest possible date.

3.2   As more fully set forth below, in accordance with the schedule below, the Settlement Fund payments provided by AME Defendants to the Administrator will be maintained by the Administrator in an Escrow Account to be held as a Court-approved Qualified Settlement Fund pursuant to Section 1.468B-1 et seq. of the Treasury Regulations promulgated under Section 468B of the Internal Revenue Code of 1986, as amended, and shall be deposited in an interest-bearing escrow account.

3.3   A primary goal of the Qualified Settlement Fund shall be to ensure no adverse federal tax treatment to the Class Members and protection from claims of any of the Parties. AME Defendants shall then pay, or cause to be paid, the Settlement Amount into the Qualified Settlement Fund for



the benefit of the Class by wire transfer to a bank account identified by the Administrator. The Qualified Settlement Fund shall be an interest-bearing tax-qualified trust account established for and held in trust for the sole benefit of the Settlement Class Members. It is the Parties' intent that any interest gained on the account be first utilized to cover the costs and/or expenses of the Administrator. To the extent funds remain beyond that, the Parties desire for that interest to be allocated amongst the Class Members in accordance with the Plan of Distribution set forth in Section 4.1.

3.3.1 The Monetary Consideration shall be paid as follows: by no later than November 30, 2024, AME Defendants shall pay or cause to be paid **$10,000,000** (ten million dollars) (the "Initial Deposit"). AME Defendants shall pay the balance of the Settlement Amount, **$10,000,000** (ten million dollars), into the Qualified Settlement Fund by no later than May 30, 2025. The total Settlement Amount due by May 30, 2025 in this paragraph will be reflective of the present value from August 2, 2024 (factoring in the Initial Deposit payment made) to the date of payment and shall be increased to reflect that value.

(a)    The Parties agree that any calculations relating to the present value of the Settlement Amount shall be based on the Federal Funds Rate on a daily basis from August 2, 2024 until the full Settlement Amount has been paid.

(b)    AME Defendants agree that the Settlement Amount will not be funded in any way through assessments and/or budget raises to any local churches, annual conferences, or district conferences at any point in time, now or in the future.

(c)    If the Settlement Amount is not timely paid in accordance to the above schedule, Class Counsel in its discretion may take all necessary action to enforce this Agreement. AME Defendants shall be liable for any costs, including additional interest, and reasonable attorneys' fees incurred by Class Counsel in enforcing the Settlement.

(d)    Other than the AME Defendants' obligation to pay or cause to be paid the Settlement Amount into the Qualified Settlement Fund set forth in ¶ 4.1 herein, AME Defendants shall have no obligation to make any other payment into the Qualified Settlement Fund or otherwise, pursuant to this Agreement, and shall have no responsibility, obligation, or liability with respect to the Qualified Settlement Fund or the monies maintained therein or the administration of the Settlement, including, without limitation, any responsibility or liability for any fees, taxes, investment decisions, maintenance, supervision or distribution of any portion of the Settlement Amount. The limited exception to this is that if the interest earned by the Qualified Settlement Fund before distribution to the Class is insufficient to



cover the costs of the Administrator for Class Notice and settlement administration, AME Defendants will cover the excess amount owed to the Administrator.

(e)    The Settlement Amount is the maximum aggregate amount AME Defendants shall be obligated to pay under this Agreement, if it is approved by the Court, except for potential Notice and settlement administration costs as noted above.

3.4    <u>Business Practice Changes</u>. AME Defendants agree that they have made or will make the following business practice changes as a term of the Settlement.

3.4.1  Complete a formal wind down and closure of the AMEC Department of Retirement Services by July 31, 2028.

(a)    The Parties acknowledge that a new Executive Director of the AMEC Department of Retirement Services, Reverend Brian Blackwell, was elected at the 52nd Quadrennial Session of the AME General Conference, and that he shall manage and supervise the winding down and closure of the AMEC Department of Retirement Services consistent with the Agreement.

(b)    Part and parcel to this closure, all of the Plan funds currently held at Symetra will be unwound and liquidated and the balance transferred to Qualified Trust, to the extent permitted by federal tax law, and held there for the benefit of Plan participants.

3.4.2  Adopt and implement the following:

(a)    That the Department of Retirement Services will cease to exist by July 31, 2028.

(b)    That the Plan investments currently held at Symetra are to be unwound and liquidated and transferred to the Qualified Trust.

(c)    Except as set forth in the approved budget of the AME Church, no person or governing body in the AME Church shall assess or accept any type of administrative, service, operational, management, or other such fee related to the administration and management of the Plan.

(d)    The only fees that may be payable from the Legacy Plan are those charged by the Administrator for the Qualified Settlement Fund (up to the amount of interest earned only), those charged by the Third Party Administrator, and those charged by the Advisor to the Qualified Trust for the regular administration, management, and investment of the Legacy Funds, once transferred to the Qualified Trust.

(e)    That, as of August 2, 2024, the Plan is governed by the principles set forth in the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, et seq.



3.4.3 As of August 24, 2024, the Plan ceased all administrative fees associated with it assessed by any person or governing body in the AME Church.

3.4.4 As of August 24, 2024, AME Defendants agreed that the Plan will be henceforth governed by the principles set forth in ERISA regulations.

3.4.5 As of August 24, 2024, AME Defendants agreed to ensure a process by which contributions are received from the local churches and transferred to Wespath for the purpose of ensuring that contributions are transferred as quickly, efficiently, and directly as possible for deposit with Wespath.

## 4.0    ADMINISTRATION AND CALCULATION

4.1    <u>Plan of Distribution</u>: The Settling Parties agree on the following principles of distribution of the Settlement Amount:

4.1.1 The calculation of the amount due to each Class Member from the Net Settlement Fund will be based on the ratio of the Class Member's account balance as of June 30, 2021 to the total value of all Class Member's account balances as of June 30, 2021, accounting for any distributions taken by participants between June 30, 2021 and the date those balances were retroactively calculated.. This calculation shall be made after entry of the order granting Final Approval.

4.1.2 It is the intent of this Agreement to allocate the Settlement Amount to restore losses to Class Member participants in the Plan. In no event shall any Class Member be entitled to a distribution prior to the transfer of the Settlement Amount to the Qualified Trust. Any request by a participant for a distribution of his or her account in the Qualified Trust shall be made and administered pursuant to the Plan's eligible distribution events.

4.2    The Administrator, pursuant to the Plan of Distribution and subject to such supervision and direction of Class Counsel with assistance as necessary from the Department of Retirement Services, and the Court as may be necessary or as circumstances may require, shall administer and calculate the allocation of each Class Members' pro rata share of the Net Settlement Amount and shall provide such calculation to the Third Party Administrator of the Legacy Fund for purposes of allocating each Class Member's proportionate share of the Settlement Amount to each participant's account in the Qualified Trust.  Each participant's pro-rata payment shall be offset by past distributions to that participant, if applicable. The Administrator shall oversee the

15



distribution of the Net Settlement Amount from the Qualified Settlement Fund to the Qualified Trust.

4.3    The Net Settlement Amount shall be allocated to the Class Members substantially in accordance with the Plan of Distribution set forth in the Notice and approved by the Court.

4.4    The Advisor shall invest the Qualified Trust in a manner consistent with and compliant with the standards befitting an independent professional investment advisor. The Advisor shall be a fiduciary and maintain adequate insurance coverage in excess of $60,000,000 to cover potential losses in managing plan funds.

4.5    The Administrator shall not disburse funds from the Qualified Settlement Fund except pursuant to and upon entry of the Final Approval Order and Judgment.

4.6    All funds held in the Qualified Settlement Fund shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Agreement and/or further order(s) of the Court.

## 5.0    ATTORNEYS' FEES, REPRESENTATIONS, EXPENSES, AND SERVICE AWARDS

5.1    <u>Attorneys' Fees and Costs</u>. Class Counsel does not plan to make an application for attorneys' fees and costs or for payment of a service award to named Plaintiffs at this time. This is not a term of or consideration for this Agreement, and this statement of future intent is not binding on Class Counsel. At this time, Class Counsel expects to make such a request at such time as the full extent of the recovery available in this Action comes more clearly into focus. At that time, Class Counsel will move for an award of attorneys' fees based on the total consideration, award and/or judgment made available to the Class, inclusive of this settlement with the AME Defendants, as well as any settlements and/or judgment amounts against other Defendants, plus reimbursement of reasonable costs and expenses incurred in relation to their investigation of and



litigation of this Action, and for an appropriate service award for named-Plaintiffs under the circumstances. AME Defendants may choose to oppose some or all of Plaintiffs' request for fees. The Settling Parties agree not to appeal any Court award of attorneys' fees, costs, expenses, or service awards that is consistent with the foregoing limitations.

> 5.1.1 Except as provided for in this Section 5.1, the Settling Parties will bear their own attorneys' fees, costs, and expenses incurred in the prosecution, defense, or settlement of the Action. AME Defendants' obligation to pay any attorneys' fees and costs to any person incurred on behalf of Plaintiffs and/or the Class in this Action shall be limited to the judicially approved amount established pursuant to this Section. In no event shall AME Defendants' aggregate liability under this Settlement, including attorneys' fees and costs, exceed the present value of $20,000,000 (twenty million dollars) from August 2, 2024 (other than potential costs owed to the Administrator as set forth in Section 3.1.1(d)). Any allocation of fees between or among Class Counsel and any other person representing Plaintiffs of the Class shall be the sole responsibility of Class Counsel, subject to any alterations by the Court.

5.2    <u>Settlement Independent of Award of Fees, Costs and Service Payments</u>. The procedure for the allowance or disallowance by the Court of a Fee and Expense Application by Class Counsel is not part of the Settlement set forth in this Agreement. The Court's denial of any Fee and Expense Application in whole or in part shall not prevent this Agreement from becoming effective, nor shall it be grounds for termination, and the Settling Parties shall request that the Court enter a finding pursuant to Rule 54(b) the Federal Rules of Civil Procedure with respect to the Judgment, and to address the request for approval of the Fee and Expense Application separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Agreement, and shall further request that any order or proceeding relating to the Fee and Expense Application not affect the finality of the Court's Judgment approving this Agreement and the Settlement set forth herein.

5.3    Plaintiffs, the Settlement Class, and Class Counsel hereby waive, discharge and release AME Defendants from any and all claims for attorneys' fees, by lien, statute, or otherwise for legal services in connection with this Action, except as set forth herein. AME Defendants shall not be



responsible for and shall have no liability whatsoever with respect to the allocation, distribution, or apportionment of any award of attorneys' fees and expenses among Class Counsel or any other person who may assert a claim thereto.

## 6.0    PRELIMINARY APPROVAL

6.1    <u>Order of Preliminary Approval</u>. Within fourteen (14) days after the execution of this Agreement, Plaintiffs shall move the Court for entry of the Preliminary Approval Order. Pursuant to the motion for preliminary approval, Plaintiffs will request that the Court:

> 6.1.1 Find it will likely be able to approve the Settlement as fair, reasonable, and adequate;

> 6.1.2 Preliminarily certify the Class for settlement purposes only;

> 6.1.3 Approve the form, content, and manner of Class Notice and find that the notice program set forth in Section 7.0 of this Agreement constitutes the best notice practicable under the circumstances, and satisfies due process and Rule 23 of the Federal Rules of Civil Procedure;

> 6.1.4 Direct that Class Notice be sent to all the Class Members;

> 6.1.5 Appoint Verita Global, LLC as Administrator;

> 6.1.6 Set the date and time for the Final Approval Hearing, which may be continued by the Court from time to time without the necessity of further notice to the Class Members;

> 6.1.7 Set the Objection Deadline and Opt-Out Deadline.

## 7.0    CLASS NOTICE

7.1    <u>CAFA</u>. Pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1715, *et seq.*, within ten days after filing of Plaintiffs' motion for preliminary approval, AME Defendants shall send written notice of the Settlement to the Attorney General of the United States, appropriate state agencies, and any other appropriate government agencies. The Parties agree that the foregoing notices will satisfy the obligations of such Act.

7.2    <u>Class Member Identification</u>. As soon as practicable after Preliminary Approval, but in any event no more than ten (10) days after the execution of this Agreement, AME Defendants shall

18



provide the Administrator with access to their records for each Person reasonably believed to be a potential Class Member, the following information, if reasonably available: name, email address(es), last known mailing address, and participant account history and activity.

7.3    Timing of Class Notice. The Administrator shall disseminate Class Notice to potential Class Members not more than thirty (30) days after Preliminary Approval.

7.4    Mailing of Settlement Notice. The Administrator shall send the Mail Notice via first class mail to the list of persons generated through the process for Class Member Identification in Section 7.2. If a Class Notice sent to any potential Class Member is returned as undeliverable, the Administrator will promptly log such return as undeliverable and provide copies of the log to AME Defendants and Class Counsel,. If the mailing is returned to the Administrator with a forwarding address, the Administrator will forward the mailing to that address. For other returned mailings, the Administrator will run the name and address one time through a single commercial database chosen by the Administrator, and should the commercial database show a more current address, the Administrator shall re-mail the returned Class Notice to the more current address. No further efforts to locate or to find a more current address for Class Members is required.

7.5    Declaration of Compliance. The Administrator shall prepare a declaration attesting to compliance with the Class Notice requirements of this Agreement. Such declaration shall be provided to Class Counsel and AME Defendants' Counsel no later than fourteen (14) days prior to the Final Approval Hearing, and Class Counsel will file the declaration with the Court in support of Final Approval.

7.6    Best Notice Practicable. The Parties agree that compliance with the procedures described in this Section is the best notice practicable under the circumstances and is due and sufficient notice to the Class of the pendency of the Action, certification of the Class, the terms of the Settlement



Agreement, and the Final Approval Hearing, and satisfies the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law, rule, and/or regulation.

## 8.0    OPT-OUTS AND OBJECTIONS

8.1    <u>Opting Out</u>. Any Class Member who wishes to exclude themselves from the Class must advise the Administrator in writing of that intent, and their opt-out request must be postmarked no later than the Opt-Out Deadline.

8.2    <u>Opt-Out Information</u>. The Administrator shall provide the Settling Parties with copies of all opt-out requests it receives and shall provide a list of all Class Members who timely and validly opted out of the Class in the Administrator's declaration filed with the Court, as required by Section 7.5. Any individual in the Class who does not timely (as measured by the postmark on that individual's written notice) opt out of the settlement by written notice directed to the Administrator and containing the requisite information shall remain in the Class and shall be bound by any Orders of the Court about the Settlement or the Class. Any individual in the Class who fails to timely and validly opt out of the Settlement shall be bound by the terms of this Settlement.

8.2.1  In the written request for exclusion, the Class Member must state: (1) their full name, last four digits of their social security number, address, and telephone number where they may be contacted; and (2) a statement that they wish to be excluded from the Class. The request for exclusion must be personally signed by the Class Member submitting the request. A request to be excluded that does not include the foregoing information, that is not sent to the Administrator, that is not postmarked by the Opt-Out Deadline, or that is not personally signed by the Class Member shall be invalid.

8.2.2  No person shall purport to exercise any exclusion rights of any other person, or purport (a) to opt-out Class Members as a group, aggregate, or class involving more than one Class Member; or (b) to opt-out more than one Class Member on a single paper, or as an agent or representative. Any such purported opt-outs shall be void.

8.2.3  Any member of the Class who submits a valid and timely request for exclusion will not be a Class Member and shall not be bound by the terms of this Agreement. If the Administrator believes any opt-out request is ambiguous as to its validity, the



Administrator shall provide that request to Class Counsel and AME Defendants' Counsel for review.

8.2.4 Copies of Requests for Exclusion will be provided by the Administrator to Class Counsel and to AME Defendants' Counsel not later than seven (7) days after the Opt-Out Deadline. The Administrator will satisfy this obligation by providing that information to the counsel identified in Section 8.3 below. The Claims Administrator will provide a list of each Class member who timely and validly opted out of the Class in its declaration filed with the Court, as required by Section 7.5. Members of the Class who do not properly and timely submit a Request for Exclusion will be bound by this Settlement Agreement and the Judgment, including the Release in Section 11 below.

8.3    Objections. Any Class Member may file a statement in support of or objection to the Settlement by the Objection Deadline. Any such statement or objection shall be filed with the Court at least thirty (30) calendar days prior to the Final Approval Hearing (or other date as prescribed by the Court), and also delivered by hand, email or First-Class Mail by that same date to Class Counsel and AME Defendants' counsel at the addresses listed herein below:

| CLASS COUNSEL | AME DEFENDANTS' COUNSEL |
|---|---|
| Matthew E. Lee<br>Jeremy R. Williams<br>**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**<br>900 W. Morgan Street<br>Raleigh, NC 27603<br>919-600-5000<br>Fax: 919-600-5035<br>mlee@milberg.com<br>jwilliams@milberg.com | Bruce A. McMullen<br>Mary Wu Tullis<br>**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**<br>First Horizon Building<br>165 Madison Ave., Ste. 2000<br>Memphis, TN 38103<br>T: 901.526.2000<br>bmcmullen@bakerdonelson.com<br>mtullis@bakerdonelson.com |

8.4    Any such statement or objection must state: (1) their full name; (2) their address; (3) the telephone number and email address where they may be contacted; (4) all grounds for the objection, with specificity and with factual and legal support for each stated ground; (5) the identity of any witnesses they may call to testify; (6) copies of any exhibits that they intend to introduce into evidence at the Final Approval Hearing; (7) a statement of the identity (including name,



address, law firm, phone number and email) of any lawyer who will be representing the individual

with respect to any objection; (8) a statement of whether they intend to appear at the Final Approval

Hearing with or without counsel; and (9) a statement as to whether the objection applies only to

the objector and a specific subset of the Class, or the entire Class.

Such objection must be filed with the Court with a postmark dated on or before the

Objection Deadline. Any Class Member who does not submit a timely objection in accordance

with this Agreement, the Notice, and otherwise as ordered by the Court shall not be treated as

having filed a valid objection to the Settlement and shall forever be barred from raising any

objection to the Settlement.

8.4.1  The Settling Parties will have the right to depose or seek discovery from any objector
to assess whether the objector has standing and to understand the nature of the objection.

8.5    Any Class Member who objects may (but is not required to) appear at the Final Approval

Hearing, either in person or through an attorney hired at their own expense, to object to the fairness,

reasonableness, or adequacy of this Agreement or the Settlement. A member of the Class who opts

out may not object to this Agreement and is not entitled to be heard at the Final Approval Hearing.

8.6    Any individual in the Class who does not object to the Settlement in the manner prescribed

herein and in the Notice, shall be deemed to have waived such objection and their right to object

to the Settlement or the Judgment, and shall forever be barred and foreclosed from making any

objection to the fairness, adequacy or reasonableness of the proposed Settlement and the Final

Judgment, and from otherwise being heard concerning the Settlement and the Judgment in this or

any other proceeding.

## 9.0    FINAL JUDGMENT

9.1    If the Settlement is approved preliminarily by the Court, and all other conditions precedent to the Settlement have been satisfied, no later than fourteen (14) calendar days prior to Final Approval Hearing:

> 9.1.1 Plaintiffs shall request that the Court enter the Final Approval Order, with Class Counsel filing a memorandum in support of the motion.

> 9.1.2 Class Counsel and/or AME Defendants may file a memorandum addressing any objections to the Settlement.

9.2    At the Final Approval Hearing, the Court will consider and determine whether the provisions of this Agreement should be approved, whether the Settlement should be finally approved as fair, reasonable, and adequate, whether any objections to the Settlement should be overruled, and whether a judgment reflecting final approval of the Settlement should be entered.

9.3    This Agreement is subject to and conditioned upon the issuance by the Court of a Final Approval Order which grants final approval of this Agreement and:

> 9.3.1 Finds that the Class Notice provided satisfies the requirements and due process and Federal Rule of Civil Procedure Rule 23(e)(1);

> 9.3.2 Finds that the Class Members have been adequately represented by Plaintiffs and Class Counsel;

> 9.3.3 Finds that the Settlement Agreement is fair, reasonable, and adequate to the Class, that each Class Member shall be bound by this Agreement, including the release in Section 11, the bar in Section 11, and the covenant not to sue in Section 11.9, and that this Settlement Agreement should be and is approved;

> 9.3.4 Dismisses Plaintiffs' claims against AME Defendants and Bishop James L. Davis and Bishop Samuel L. Green with prejudice;

> 9.3.5 Permanently enjoins each and every Class Member from bringing, joining, or continuing to prosecute any Released Claims against AME Defendants or the Released Parties; and

> 9.3.6 Retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation, and enforcement of this Settlement.



9.4    The judgment entered at the Final Approval Hearing will be deemed final for purposes of this Agreement after the latest of the following: (i) if no individual, or counsel on the individual's behalf, has filed an appearance that would give the individual potential standing to appeal the Final Approval Order, then on the date the settlement is finally approved by the Court; (ii) if an individual, or counsel on the individual's behalf, has filed an appearance, and no notice of appeal of the Final Approval Order is filed, the expiration date of the time for filing any appeal from the judgment, including any extension of such expiration date granted by order of any court of competent jurisdiction, by operation of law, or otherwise; (iii) the date of final affirmance on an appeal of the judgment, the expiration of the time for a petition for rehearing and a petition for *certiorari* of the judgment, or, if such a petition is filed, either the denial of that petition or, if the petition is granted, the date of final affirmance of the Judgment following review pursuant to that grant; or (iv) the date of final dismissal of any appeal of the judgment or the final dismissal of any proceeding to review the judgment.

## 10.0    RELEASE OF CLAIMS

10.1    **Released Claims**.  Plaintiffs and each Class Member, on behalf of themselves and their respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, assigns, all those who claim through them or who assert or could assert claims on their behalf, including all derivative claims asserted on behalf of the Plan, shall, upon the Effective Date, by operation of the Final Judgment, be deemed to have fully, conclusively, irrevocably, forever, and finally released, relinquished, and discharged the Released Parties from any and all claims in this Action or relating to the allegations in this Action, Unknown Claims, actions, causes of action, rights, suits, debts, sums of money, payments, obligations, reckonings, promises, liabilities, damages, interest, penalties, attorney's fees and costs, liens, judgments, and demands of any kind whatsoever and arising from the allegations of this Action, whether asserted

24



individually or in a representative capacity, whether past or present, mature or not yet mature, that any of the Plaintiffs or Class Members have raised or could have raised in the Action against any of the Released Persons relating in any way to the allegations in the Action ("Released Claims"). For the avoidance of doubt, Plaintiffs and Class Members are not releasing any claims against any of the non-AME Defendants, including, but not limited to, Dr. Jerome V. Harris and/or his estate or Sandra Harris, in the Action.

10.2    **Unknown Claims.**    Plaintiffs and Class Members explicitly acknowledge that Unknown Claims within the scope of Released Claims could possibly exist.  Plaintiffs or any Class Member may hereafter discover facts other than or different from those that they know or believe to be true with respect to the subject matter of the Released Claims or the law applicable to such claims may change. Nonetheless, Plaintiffs and Class Members expressly agree that they shall have irrevocably waived and fully, finally and forever settled and released any known or unknown, suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, contingent or non-contingent, claims with respect to all Released Claims, including Unknown Claims up to the Effective Date of this Agreement. Further, Plaintiffs and Class Members agree and acknowledge that they are bound by this Agreement, including by the Releases, and that all of their claims in the Action asserted against AME Defendants shall be dismissed with prejudice and released, without regard to subsequent discovery of different or additional facts or subsequent changes in the law, and regardless of whether unknown losses or claims exist or whether present losses may have been underestimated in amount or severity, and even if they never received actual notice of the Settlement or received a Settlement Payment. The Parties acknowledge that the foregoing Releases were bargained for and are a material element of the Agreement.



10.3    In connection with the foregoing Releases, Plaintiffs and each Class Member shall be deemed, as of the entry of the Final Judgment, to have waived any and all provisions, rights, and benefits conferred by any statute, rule and legal doctrine similar, comparable, or equivalent to California Civil Code Section 1542, which provides that:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

10.4    To the extent that anyone might argue that these principles of law are applicable—notwithstanding that the Parties have chosen Tennessee law to govern this Settlement Agreement—Plaintiffs agree, and each Class Member is deemed to agree, that the provisions of all such principles of law or similar federal or state laws, rights, rules, or legal principles, to the extent they are found to be applicable herein, are hereby knowingly and voluntarily waived, relinquished, and released. Plaintiffs recognize, and each Class Member will be deemed to recognize, that, even if they may later discover facts in addition to or different from those which they now know or believe to be true, they nevertheless agree that, upon entry of the Final Judgment, they fully, finally, and forever settle and release any and all Released Claims and will be permanently barred and enjoined from the institution or prosecution of any and all Released Claims against the Released Parties only.

10.5    Provided, however, that Released Claims do not include: Plaintiffs and Class Members' rights and obligations under this Agreement.

10.6    It is expressly understood that nothing in this Agreement is intended to impair or affect Plaintiffs' claims, individually, derivatively on behalf of the Plan, and on behalf of the Class against any other Party in the Action, and such claims, aside from the Released Claims against the Released Parties, are expressly reserved. To the extent there is any conflict between this Agreement

26



and the Plaintiffs' remaining claims against other Parties in the litigation, any such conflicts shall be resolved in favor of preserving those claims in their entirety.

10.7    This Agreement and the releases herein do not affect the rights of individuals in the Class who timely and properly submit a request for exclusion from the Settlement Class in accordance with this Agreement.

10.8    If Final Approval is not granted, or this Agreement is terminated or rendered void, the certification of the Class shall be automatically vacated and shall not constitute evidence or a binding determination that the requirements for certification of a class for trial purposes in this or any other action can be or have been satisfied. In that event, AME Defendants reserve and shall have all rights to challenge certification of a class action for trial purposes in the Action or in any other action, on all available grounds as if no Class had been certified.

10.9    **Covenants Not to Sue**. Plaintiffs, individually, derivatively on behalf of the Plan, and on behalf of Class Members covenant and agree:

> 10.9.1   not to file, commence, prosecute, maintain, intervene in, or participate in (as parties, class members or otherwise) any action in any jurisdiction based on or relating to any of the Released Claims, or the facts and circumstances relating thereto, against any of the Released Persons;

> 10.9.2   not to organize or solicit the participation of potential Class Members in a separate class for purposes of pursuing any action (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action in any jurisdiction) based on or relating to any of the Released Claims, or the facts and circumstances relating thereto, against any of the Released Persons; and

> 10.9.3   that the foregoing covenants and this Agreement shall be a complete defense to any of the Released Claims asserted against any of the Released Persons.

10.10   **Plaintiffs' Representations and Warranties**. Plaintiffs, individually, derivatively on behalf of the Plan, and on behalf of Class Members represent and warrant that they are the sole and exclusive owners of their Released Claims and that they have not assigned or otherwise



transferred any interest in any Released Claims against any Released Persons, and further covenant

that they will not assign or otherwise transfer any interest in their Released Claims.

10.11  Plaintiffs, individually, derivatively on behalf of the Plan, and on behalf of Class Members

represent and warrant that, after entry of Final Judgment, they have no surviving claim or cause of

action against any of the Released Persons with respect to any of the Released Claims.

10.12  Plaintiffs, individually, derivatively on behalf of the Plan, and on behalf of Class Members

represent and warrant that there are no outstanding liens or claims against the Action.

10.13  The Parties, and each of them on their own behalf only, represent and warrant that they are

voluntarily entering into the Agreement as a result of arms-length negotiations among their

counsel; that in executing the Agreement, they are relying solely upon their own judgment, belief,

and knowledge, and the advice and recommendations of their own independently selected counsel,

concerning the nature, extent and duration of their rights and claims hereunder and regarding all

matters that relate in any way to the subject matter hereof; and that, except as provided herein, they

have not been influenced to any extent whatsoever in executing the Agreement by representations,

statements, or omissions pertaining to any of the foregoing matters by any Party or by any person

representing any Party.  Each of the Parties assumes the risk of mistake as to facts or law.

## 11.0    TERMINATION RIGHTS & REMEDIES

11.1    <u>Either Side May Terminate this Agreement</u>. Plaintiffs and AME Defendants shall each

have the right to unilaterally terminate this Agreement by providing written notice of their election

to do so ("Termination Notice") to the other Settling Party within twenty (20) days after notice of

the occurrence of any of the following events:

11.1.1  The Effective Date does not occur;

11.1.2  The number of Persons who exclude themselves from the Settlement Class (or who
are deemed opted out) exceeds 10% of the total potential Class Members, provided that
AME Defendants may elect to accept a reduction in the Settlement Amount in

28



proportionate amount to the percentage of persons who exclude themselves or who are deemed opted out, in lieu of termination.

11.2   If an option to terminate this Agreement and the Settlement arises, Plaintiffs or AME

Defendants are not required to exercise the option to terminate.

11.3   If this Agreement fails for any reason, or if this Agreement is terminated by Plaintiffs or

AME Defendants pursuant to Section 12.1:

> 11.3.1  Any funds already paid to the Qualified Settlement Fund shall be refunded less any costs incurred that are not otherwise covered by the interest earned in the Qualified Settlement Fund;

> 11.3.2  This Agreement and the Proposed Settlement shall have no further force or effect, and all proceedings that have occurred with regard to this Agreement and the Proposed Settlement shall be without prejudice to the rights and contentions of the Parties and any Class Members;

> 11.3.3  This Agreement and all negotiations, statements and proceedings relating to them shall be without prejudice to the rights of the Parties, each of whom shall be restored to their respective positions existing immediately before the execution of this Agreement;

> 11.3.4  Pursuant to Federal Rule of Evidence 408 and any similar provisions under the laws of other states, neither this Agreement nor any related documents filed or created in connection with this Agreement shall be admissible in evidence in any proceeding, including proceedings involving Defendants in the Action who are not Settling Parties, except as necessary to approve, interpret, or enforce this Agreement;

> 11.3.5  Any judgment or order entered in the Action relating to this Agreement or the Settlement, including, without limitation, any order certifying the Settlement Class, shall be automatically vacated *nunc pro tunc*, without the requirement of any motion or further order of the Court, and will be without any force or effect; and

> 11.3.6  The Parties shall not thereafter argue or raise a claim or defense, including, but not limited to, waiver, estoppel, or any other similar or related theories, based on the Agreement (including without limitation the provisions regarding class certification) and related pleadings and orders, the fact of this Agreement having been made, or that any settlement negotiations preclude AME Defendants from opposing class certification or the claims in the Action or any other proceeding.

## 12.0   DENIAL OF LIABILITY

12.1   AME Defendants enter into this Agreement without admitting, conceding or

acknowledging any fault, liability, or wrongdoing of any kind. The AME Defendants expressly



deny that they have violated any law, breached any agreement or obligation to the Plaintiffs or the

Class Members, or engaged in any wrongdoing with respect to the Plaintiffs or the Class Members.

This Agreement, including the Plan of Distribution contained therein (or any other plan of

distribution or allocation that may be approved by the Court), any of the terms of this Agreement

or the negotiations or proceedings connected with it (including any arguments proffered in

connection therewith) shall not be construed as an admission or concession by AME Defendants

of the truth of any of the allegations in the Action, or of any liability, fault, or wrongdoing of any

kind on the part of AME Defendants, nor shall they be offered or received against any AME

Defendant as evidence of or deemed or construed to be evidence of or constitute any presumption,

concession, or admission by any AME Defendant of the truth of any allegations by Plaintiffs or

any Class Member or the validity of any claim that has been or could have been asserted in the

Action, or the deficiency of any defense that has been or could have been asserted in the Action or

in any other litigation, or of any liability, negligence, fault, damage, or wrongdoing of any kind of

any of the AME Defendants or in any way referred to for any other reason as against any of the

AME Defendants, in any civil, criminal, or administrative action or proceeding, other than such

proceedings as may be necessary to effectuate the provisions of this Agreement.

12.2    In the event the Effective Date does not occur, or this Agreement is terminated, or the

Proposed Settlement is not finally approved for any reason, AME Defendants shall retain the right

to object to the maintenance of the Action or any other proceeding as a class action and to contest

the Action or any other case on any ground.

12.3    This Agreement, including the Plan of Distribution contained therein (or any other plan of

distribution or allocation that may be approved by the Court), any of the terms of the Agreement

or the negotiations or proceedings connected with it (including any arguments proffered in



connection therewith) shall not be offered into evidence in any other case or proceeding: (a) in support of or in opposition to a motion to certify a contested class against AME Defendants; or (b) as an admission or concession of liability or wrongdoing by AME Defendants.

## 13.0    CONFIDENTIALITY AGREEMENT

13.1    The following constitutes highly confidential, sensitive, and private information (the "Confidential Information"): (a) the names, addresses, social security numbers, and other personally identifying data concerning a potential member of the Class compiled by AME Defendants or the Administrator in administering the Proposed Settlement; (b) files, documents, and electronic data related to individual account history or activity for each potential member of the Class; and (c) documents and data produced by AME Defendants in the Action identified as confidential pursuant to any agreed protective order in the Action. Confidential Information shall not be publicly disclosed by Class Counsel or other attorneys for Plaintiffs in this Action to any persons other than those identified in any agreed protective order entered in this Action or this Agreement, and shall not be used other than in this Action in connection with the Settlement. It is not a violation of this Agreement for either of the parties to provide the Court with information concerning the Plaintiffs or any objector's individual claims, or to provide the Court with anonymous aggregate claims data values solely for purposes of seeking preliminary or final approval of the Settlement Agreement or attorneys' fees, expenses, or service awards.

13.2    No Persons other than AME Defendants' counsel, Class Counsel, the Administrator, and their respective employees and contractors shall be allowed access to any Confidential Information. Any person to whom Confidential Information is disclosed or who has access to Confidential Information shall maintain it as confidential and shall not publicly disclose or release it to any person not authorized by AME Defendants, this Agreement, any agreed protective order,



or the Court. Provided, that nothing in this Agreement shall be construed to restrict or limit AME Defendants' use or disclosure of their own Confidential Information.

13.3    All agreements made and orders entered during the course of the Action relating to the confidentiality of information shall survive this Agreement.

13.4    The Parties agree that Confidential Information shall not be used by Class Counsel or anyone employed with, retained by, or otherwise in any way related or associated with Class Counsel in any other litigation, current or future, unless independently obtained through discovery in such other litigation.

## 14.0    COMMUNICATIONS

14.1    Any inquiries from potential Class Members regarding the Settlement will be directed to the Administrator. Nothing herein, however, shall preclude AME Defendants from discussing the Settlement with their present or former employees or members or from communicating with their present or former employees or members concerning the existence, terms, and implementation of the Settlement, orally or in writing.

## 15.0    MISCELLANEOUS

15.1    The Settling Parties and their counsel agree to undertake their best efforts and to cooperate with each other to effectuate this Agreement and the terms of the proposed Settlement, including taking all steps and efforts contemplated by this Agreement, and any other reasonable steps and efforts that may become necessary by order of the Court or otherwise. The Settling Parties further agree to cooperate in respect to reasonable, agreed extensions to the timetable hereunder, subject to such Court approval as may be required.

15.2    The terms and conditions set forth in this Agreement, including documents referenced herein, contains the entire and exclusive agreement of the Settling Parties hereto and supersede any prior agreements, including but not limited to the Settlement MOU, negotiations,



representations, or understandings between them, and may not be contradicted or supplemented by evidence of any prior or contemporaneous agreement. The Parties further intend that this Agreement constitutes the complete and exclusive statement of its terms as between the Parties and that no extrinsic evidence may be introduced in any proceeding concerning the terms of the proposed Settlement. Prior or contemporaneous representations not contained in this Agreement shall be of no force or effect.

15.3    All terms of this Agreement are contractual and not mere recitals and shall be construed as if drafted by all Parties hereto. The terms of this Agreement are and shall be binding upon each of the Parties hereto, upon each of their agents, attorneys, employees, successors and assigns, and upon all other Persons claiming any interest in the subject matter hereof through any of the Parties hereto, including any Class Member. Provided, however, that except as expressly provided in this Agreement, this Agreement is not intended to and does not confer upon any other person or entity any rights or remedies.

15.4    This Agreement may be amended or modified only by a written instrument signed by counsel for all Parties, and any amendments or modifications shall be presented to the Court for approval. Amendments and modifications may be made without additional notice to the potential Class Members unless such notice is required by the Court.

15.5    To the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of this Agreement.

15.6    Nothing contained in this Agreement or in any proceedings concerning the Settlement shall in any way affect AME Defendants' Cross-Complaint and Third-Party Complaint, claims, rights to seek contribution, indemnity, set-off, or any other relief from any person or entity related to the



events giving rise to this Action. All such rights and remedies of AME Defendants are specifically retained and preserved.

15.7    The administration and consummation of the Settlement as embodied in this Agreement shall be under the authority of the Court. The Court shall retain jurisdiction to protect, preserve, and implement the Agreement, including, but not limited to, enforcement of the releases contained in the Agreement, and to enter such further orders as may be necessary or appropriate in administering and implementing the terms and provisions of the Agreement and Final Judgment.

15.8    The waiver by any party of any breach of this Agreement will not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

15.9    This Agreement shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of Tennessee, and the rights and obligations of the Settling Parties shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of Tennessee without giving effect to its choice-of law principles.

15.10   The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

15.11   This Agreement shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations between the Settling Parties and all Settling Parties have contributed substantially and materially to the preparation of this Agreement.

15.12   As used herein, the plural of any defined term includes the singular thereof, and the singular of any defined term includes the plural thereof, as the context may require.



15.13  This Agreement may be executed in counterparts, each of which shall constitute an original.  This Agreement shall be deemed to have been executed upon the last date of execution by all the undersigned Parties or counsel. Each person executing this Agreement on behalf of any of the Settling Parties hereto represents that such person has the authority to so execute this Agreement.

15.14  Unless otherwise stated herein, any notice required or provided for under this Agreement shall be in writing and may be sent by electronic mail or hand delivery, postage prepaid, as follows:

> If to Class Counsel

| CLASS COUNSEL |
| :---: |
| Matthew E. Lee |
| Jeremy R. Williams |
| **MILBERG COLEMAN BRYSON** |
| **PHILLIPS GROSSMAN, PLLC** |
| 900 W. Morgan Street |
| Raleigh, NC 27603 |
| 919-600-5000 |
| Fax: 919-600-5035 |
| mlee@milberg.com |
| jwilliams@milberg.com |

<u>If to counsel for AME Defendants</u>

| | |
|---|---|
| HUNTON ANDREWS KURTH, LLP<br><br>**Douglass P. Selby**<br>General Counsel of AME Church<br><br>Bank of America Plaza, Suite 4100<br>600 Peachtree Street, NE<br>Atlanta, GA 30308<br>T: 404.888.4000<br>dselby@huntonak.com<br><br>**Wendell Taylor**<br>2200 Pennsylvania Avenue, NW<br>Washington, DC 20037<br>T: 202.955.1500<br>wtaylor@huntonak.com | BAKER, DONELSON, BEARMAN,<br>CALDWELL & BERKOWITZ, PC<br><br>**Bruce A. McMullen**<br>First Horizon Building<br>165 Madison Ave., Ste. 2000<br>Memphis, TN 38103<br>T: 901.526.2000<br>bmcmullen@bakerdonelson.com<br><br>**Mary Wu Tullis**<br>First Horizon Building<br>165 Madison Ave., Ste. 2000<br>Memphis, TN 38103<br>T: 901.526.2000<br>mtullis@bakerdonelson.com |



**SIGNATURE PAGES –**



Dated: November **27**, 2024

By: *Matthew E. Lee*
Matthew E. Lee (Nov 27, 2024 15:10 AST)
Matthew E. Lee
Interim Co-Lead Counsel for Plaintiffs

Dated: November \_\_\_\_, 2024

By: Gregorio A. Francis (Nov 27, 2024 14:11 EST)
Gregorio A. Francis
Interim Co-Lead Counsel for Plaintiffs

Dated: November \_\_\_\_, 2024

By: _____
Douglass P. Selby
Counsel For AME Church

Dated: November \_\_\_\_, 2024

By: _____
Bishop Silvester S. Beaman
President of the AME Council of Bishops

Dated: November \_\_\_\_, 2024

By: _____
Bishop Marvin C. Zanders, II
Secretary of AME Council of Bishops

Dated: November \_\_\_\_, 2024

By: _____
Bishop James L. Davis
President, General Board
African Methodist Episcopal Church

38

Dated: November \_\_\_\_, 2024          By: _____
                                        Matthew E. Lee
                                        Interim Co-Lead Counsel for Plaintiffs

Dated: November \_\_\_\_, 2024          By: _____
                                        Gregorio A. Francis
                                        Interim Co-Lead Counsel for Plaintiffs

Dated: November \_\_\_\_, 2024          By: Douglass P. Selby
                                        Douglass P. Selby
                                        Counsel For AME Church

Dated: November \_\_\_\_, 2024          By: _____
                                        Bishop Silvester S. Beaman
                                        President of the AME Council of Bishops

Dated: November \_\_\_\_, 2024          By: _____
                                        Bishop Marvin C. Zanders, II
                                        Secretary of AME Council of Bishops

Dated: November \_26\_, 2024          By: _____
                                        Bishop James L. Davis
                                        President, General Board
                                        African Methodist Episcopal Church

Signature: _____
            Douglass Selby (Nov 26 2024 15:21 EST)

Email: dselby@hunton.com

38

Dated: November _____, 2024          By: _____
                                     Matthew E. Lee
                                     Interim Co-Lead Counsel for Plaintiffs

Dated: November _____, 2024          By: _____
                                     Gregorio A. Francis
                                     Interim Co-Lead Counsel for Plaintiffs

Dated: November _____, 2024          By: _____
                                     Douglass P. Selby
                                     Counsel For AME Church

Dated: November _____, 2024          By: Silvester S. Beaman_____
                                     Bishop Silvester S. Beaman
                                     President of the AME Council of Bishops

Dated: November _____, 2024          By: Marvin C. Zanders, II_____
                                     Bishop Marvin C. Zanders, II
                                     Secretary of AME Council of Bishops

Dated: November _____, 2024          By: _____
                                     Bishop James L. Davis
                                     President, General Board
                                     African Methodist Episcopal Church

**Signature:** _Marvin C. Zanders,II (Nov 27, 2024 16:03 EST)_           **Signature:** _Bishop Silvester Beaman (Nov 27, 2024 17:24 EST)_

**Email:** bishopzanders140@gmail.com                **Email:** bishop139@ssbeaman.com

**Signature:**

**Email:** jld123bishop@yahoo.com

# 4906-5112-5505 v.1 CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE (Church Clean 11.26.2024)-c

Final Audit Report                                              2024-11-27

| | |
|---|---|
| Created: | 2024-11-27 |
| By: | Monifa Hawkins (MHawkins@huntonak.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAI9qt4EAyWAQ-d02tJamdPpBr0tA_yVSI |

## "4906-5112-5505 v.1 CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE  (Church Clean 11.26.2024)-c" History

Document created by Monifa Hawkins (MHawkins@huntonak.com)
2024-11-27 - 8:18:13 PM GMT

Document emailed to Douglass Selby (dselby@hunton.com) for signature
2024-11-27 - 8:20:20 PM GMT

Email viewed by Douglass Selby (dselby@hunton.com)
2024-11-27 - 8:20:45 PM GMT

Document e-signed by Douglass Selby (dselby@hunton.com)
Signature Date: 2024-11-27 - 8:21:32 PM GMT - Time Source: server

Agreement completed.
2024-11-27 - 8:21:32 PM GMT

**Adobe Acrobat Sign**

# CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

Final Audit Report                                          2024-11-27

| | |
|---|---|
| Created: | 2024-11-27 |
| By: | Jeff Steen (jsteen@milberg.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA6TFBaWsHTilNNEr4JzbUtpY3Pw1VTuGT |

## "CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE " History

📄 Document created by Jeff Steen (jsteen@milberg.com)
2024-11-27 - 6:52:01 PM GMT

📧 Document emailed to Matthew E. Lee (mlee@milberg.com) for signature
2024-11-27 - 6:52:09 PM GMT

📄 Email viewed by Matthew E. Lee (mlee@milberg.com)
2024-11-27 - 7:09:31 PM GMT

✏️ Document e-signed by Matthew E. Lee (mlee@milberg.com)
Signature Date: 2024-11-27 - 7:10:23 PM GMT - Time Source: server

📧 Document emailed to Gregorio A. Francis (gfrancis@realtoughlawyers.com) for signature
2024-11-27 - 7:10:24 PM GMT

📄 Email viewed by Gregorio A. Francis (gfrancis@realtoughlawyers.com)
2024-11-27 - 7:11:11 PM GMT

✏️ Document e-signed by Gregorio A. Francis (gfrancis@realtoughlawyers.com)
Signature Date: 2024-11-27 - 7:11:33 PM GMT - Time Source: server

✅ Agreement completed.
2024-11-27 - 7:11:33 PM GMT

**Adobe Acrobat Sign**